IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| PRO STAR LOGISTICS, INC., | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY |
|---|---|
| Plaintiff, | |
| v. | |
| AN ENTERPRISE, INC., | |
| Defendant. | Case No. 2:17-CV-491 TS |

This matter is before the Court on Defendant AN Enterprise, Inc's ("Enterprise") Motion to Dismiss for Improper Venue, or in the Alternative, for Transfer of Venue. Also before the Court is Plaintiff Pro Star Logistic's ("Pro Star") Motion for Leave to File Sur-Reply. For the reasons stated below, the Court will deny Defendant's Motion to Dismiss and Defendant's alternative request to transfer venue, and grant Plaintiff's Motion for Leave to File Sur-Reply.

I.   BACKGROUND

Pro Star is a property broker that arranges for the transportation of freight on behalf of its clients by utilizing third party motor carriers such as Enterprise. On or about November 24, 2014, Plaintiff and Defendant executed the "Pro Star Logistics Broker-Carrier Agreement" ("BCA"). Pursuant to that agreement, Enterprise agreed to act as a motor carrier with respect to loads tendered by Plaintiff. The BCA is silent on the issue of venue or forum selection.

On September 2, 2016, Pro Star sent a Dispatch Agreement to Enterprise for a shipment of yogurt to be transported from Melrose Park, Illinois to Montgomery, New York. Enterprise accepted the Dispatch Agreement terms the same day. The Dispatch Agreement contains a forum selection clause stating "[t]he venue and jurisdiction for any dispute arising from this agreement

1

and/or relationship between Pro Star Brokerage and other parties to this agreement, including but not limited to disputes over individual shipments, shall be brought in the court in the local district of Pro Star Brokerage."[1]

The Dispatch Agreement required Enterprise and its driver to pre-cool the refrigerated truck ("Reefer") to 35 degrees and maintain that temperature at all times during transport. On September 4, 2016, Enterprise's driver took possession of the yogurt and the temperature of the Reefer was set to 53 rather than 35 degrees as required by the Dispatch Sheet. On September 6, 2016, Enterprise's truck arrived at the destination loading dock. The consignee of the yogurt shipment noted that the Reefer temperature was set at 53 degrees and that the temperature of the yogurt ranged between 48.4 and 51.4 degrees. The consignee rejected the shipment and refused to take delivery, as the yogurt had been exposed to unsanitary temperature conditions.

Pro Star's client, WWF Operating Company ("White Wave"), contacted Pro Star to assert a claim against Enterprise for the full amount of the loss. Pro Star made multiple demands for payment from Enterprise. Enterprise failed to make any reimbursement. White Wave assigned its rights in the shipment of yogurt to Pro Star. Pro Star then brought two causes of action against Enterprise in the Third Judicial District Court in and for Salt Lake County: one breach of contract claim and one Carmack Amendment claim. Enterprise then removed the action to this Court and filed the Motion to Dismiss for Lack of Venue, or in the Alternative to Transfer for Convenience of the Parties.

---

[1] Docket No. 9-1 Ex. B, at 2 (Dispatch Agreement).

## II. DISCUSSION

Defendant's Motion argues that venue is improper or, alternatively, that venue should be transferred. The Court will discuss each issue in turn.

### A. PROPER VENUE

Defendant moves for dismissal for improper venue under 28 U.S.C. § 1391(b). However, that provision has no application because this case was removed from state court. "The venue of removed actions is governed by 28 U.S.C. § 1441(a) . . . ."[2]

Section 1441(a) states, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."[3] This Court has original jurisdiction based on diversity.[4] The action was filed in the Third Judicial District in and for Salt Lake County, in the State of Utah. The District embracing that court is the United States District Court for the District of Utah. Therefore, venue is proper and the Motion to Dismiss based on improper venue must be denied.

### B. REQUEST TO TRANSFER

Alternatively, Defendant seeks to transfer the case for the convenience of the parties pursuant to 28 U.S.C. § 1404(a). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[5]

---

[2] *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953); *see also Lundahl v. Pub. Storage Mgmt.*, 62 F. App'x. 217, 218 (10th Cir. 2003).

[3] 28 U.S.C. § 1441(a).

[4] *See* Docket No. 2, at 2.

[5] 28 U.S.C. § 1404(a).

To determine this issue, the Court must first decide if the parties have consented to venue in Utah. Then the Court must decide if, in light of the decision on consent, the interests of justice weigh in favor of transfer.

*1. Forum Selection Clause*

As stated, the Dispatch Agreement contains a forum selection clause while the BCA does not. Enterprise argues that the BCA preempts the Dispatch Agreement and, therefore, the forum selection clause in the Dispatch Agreement does not apply.

The BCA specifies Federal and Illinois state law govern.[6] The Illinois rules governing contract interpretation are explained by the Supreme Court of Illinois:

> The primary objective in construing a contract is to give effect to the intent of the parties. A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent. Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others. The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself.[7]

Enterprise asserts that the BCA excludes subsequent documents or terms and conditions from being incorporated into the BCA and from having effect. The single sentence that Enterprise relies upon states, "[t]erms and conditions contained in bills of lading or in other documents shall not apply except to the extent they establish the delivery of cargo."[8] Enterprise does not assert that the Dispatch Agreement is a bill of lading. Instead, Enterprise relies on the "other documents" portion of the sentence to exclude the terms of the Dispatch Agreement.

---

[6] Docket No. 9-1 Ex. A, ¶ 16 (Broker-Carrier Agreement).

[7] *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007) (internal citations omitted).

[8] Docket No. 9-1 Ex. A, ¶ 1 (Broker-Carrier Agreement).

The Court cannot read that phrase so broadly. Under Enterprise's interpretation of "other documents," the subsequent rate sheets to be incorporated into the agreement,[9] and the clause allowing future written modification of the agreement by the parties[10] would be invalid. As Pro Star points out in its brief, bills of lading are "basic transportation agreements between carriers (such as Defendant) and the shipper (such as Plaintiff's customers). As a broker, Plaintiff is not party to the bill of lading or invoice agreement between the carrier and shipper and thus cannot be bound by its terms."[11] In the context of the "bill of lading" sentence, and read in conjunction with the agreement as a whole, viewing each part in light of the others, the meaning of "other documents" is meant to exclude third party agreements from being incorporated into the BCA. The Dispatch Agreement does not constitute such a third party agreement. Therefore, the BCA does not preempt the validity of the Dispatch Agreement.

Moreover, the BCA's plain language expressly incorporates the Dispatch Agreement. The BCA lays out the process for the parties to agree regarding the compensation for each load. "Carrier shall be compensated for its services in the amount identified in the Rate Confirmation Sheet issued to Carrier by PRO STAR LOGISTICS following PRO STAR LOGISTICS acceptance of Carrier's response to each Bid Offer."[12] Although the contract expresses the process in reverse chronological order, the process of negotiating each load appears to be: 1) Pro Star submits a bid offer to the Carrier; 2) Carrier responds to the bid offer (presumably with a

---

[9] *Id.* ¶ 3 (Broker-Carrier Agreement).

[10] *See id.* ¶ 18. (Broker-Carrier Agreement) ("This agreement may only be altered, amended or modified pursuant to a written document executed by authorized representatives of both parties.").

[11] Docket No. 11, at 7 (citation omitted).

[12] Docket No. 9-1 Ex. A, ¶ 3 (Broker-Carrier Agreement).

bid); 3) Pro Star accepts the Carrier's response or bid; 4) Pro Star issues Carrier with a Rate Confirmation Sheet; and 5) Carrier signs acceptance of Rate Confirmation Sheet.

Although the Dispatch Agreement is titled "Dispatch Information," rather than Rate Confirmation Sheet, it acts as the final document between the parties confirming the terms of the shipment and requiring acceptance by the Carrier. In its briefing, Pro Star identified the Dispatch Agreement as the rate confirmation sheet.[13] Defendant did not dispute this characterization. As the rate confirmation sheet, the terms of the Dispatch Agreement are expressly incorporated into the BCA rather than preempted by it.[14] Therefore, the Court finds that the Dispatch Agreement governs this dispute.

### 2. *The Forum Selection Clause is Mandatory*

Having determined that the Dispatch Agreement governs this dispute, the Court must now analyze the effect of the forum selection clause contained in that agreement. The forum selection clause states, "[t]he venue and jurisdiction for any dispute arising from this agreement and/or relationship between Pro Star brokerage and other parties to this agreement, including but not limited to disputes over individual shipments, shall be brought in the court in the local district of Pro Star Brokerage."[15] Enterprise asserts the clause is merely permissive for three reasons:  a) The clause uses the word "local" instead of specifying Utah; b) The clause does not use the words "only" or "sole" in reference to the forum; and c) the forum selection and choice of law clauses are in conflict.

---

[13] Docket No. 11, at 8.

[14] *See* Docket No. 9-1 Ex. A, ¶ 3 (Broker-Carrier Agreement) ("Each such Rate Confirmation Sheet . . . shall be deemed to be a part of this Agreement and incorporated by reference herein.").

[15] Docket No. 9-1 Ex. B, at 2 (Dispatch Agreement).

### a. Local District

Enterprise asserts that the use of the phrase, "local district of Pro Star Brokerage" does not select Utah and introduces extrinsic evidence from Pro Star's website indicating that Plaintiff has warehouses in various locations, including Chicago. However, it is undisputed that Pro Star is a Utah Corporation. Enterprise's extrinsic evidence clearly indicates Salt Lake City is Pro Star's "Head Office."[16] Furthermore, both the BCA[17] and the Dispatch Agreement show Salt Lake City as Pro Star's corporate address.[18] Finally, Enterprise conceded in its Motion that Utah is the "local" referenced in the forum selection clause stating, "the Dispatch Sheet forum provision states that disputes are to be brought in the Utah state courts . . . ."[19] Therefore, the use of the phrase "local district of Pro Star" is not ambiguous and provides that Utah is the selected forum.

### b. Mandatory vs. Permissive

Enterprise next argues that the forum selection clause is not mandatory, but is merely permissive. "Mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum. In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere."[20] Clauses where venue is specified with mandatory language are enforced.[21] However, "where only

---

[16] Docket No. 12, at 4.

[17] Docket No. 9-1 Ex. A, ¶ 11 (Broker-Carrier Agreement) (address for notice).

[18] Docket No. 9-1 Ex. B (Dispatch Agreement).

[19] Docket No. 9, at 7.

[20] *K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 498 (10th Cir. 2002) (internal quotation marks and citation omitted).

[21] *Id.* at 499.

jurisdiction is specified . . . the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive."[22]

Enterprise narrowly focuses on the word "shall," and cites to cases where courts found a clause containing "shall" to be permissive rather than mandatory. However, all of the cases cited by Defendant found the use of the word "shall" in reference to jurisdiction was merely permissive.[23] The clause at issue here is quite different, as it contains a mandatory reference to venue.

The Tenth Circuit has found similar clauses to be mandatory. In *Milk 'N' More v. Beavert*,[24] the forum selection clause stated, that "venue shall be proper under this agreement in Johnson County, Kansas."[25] The Tenth Circuit found that the use of the word "shall" was mandatory and enforced the forum selection clause.[26] In doing so, the Tenth Circuit relied on a case from the District of Colorado involving a similar clause. That clause stated: "It is agreed for purposes of this agreement, venue shall be in Adams County, Colorado."[27] The Tenth Circuit

---

[22] *Id.* (citing *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992)).

[23] *See King v. PA Consulting Group, Inc.*, 78 F. App'x 645, 646 (10th Cir. 2003) (finding contract provision that stated the "agreement and all matters arising in connection with it . . . shall be subject to the jurisdiction of the New Jersey Courts" to effectuate permissive venue selection); *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 76 (9th Cir. 1987) (finding provision stating California courts "shall have jurisdiction over the parties" to be permissive); *K & V Sci. Co.*, 314 F.3d at 496 (finding clause stating that"[j]urisdiction . . . is Munich" established permissive venue selection).

[24] 963 F.2d 1342 (10th Cir. 1992).

[25] *Id.* at 1343.

[26] *Id.* at 1346.

[27] *Id.* (quoting *Intermountain Sys., Inc. v. Edsall Constr. Co.*, 575 F. Supp. 1195, 1198 (D. Colo. 1983)).

agreed with the Colorado court that this clause was mandatory. The Tenth Circuit has also found "venue shall lie"[28] and "venue is proper"[29] to be examples of mandatory forum selection clauses.

Similar to the cases considered by the Tenth Circuit, the "shall be brought" language in the Dispatch Agreement does not require additional language to exclude jurisdiction elsewhere because it is a mandatory reference to venue rather than jurisdiction. The cases cited by Plaintiff in its Sur-Reply reinforce this conclusion. Therefore, the Court finds that the forum selection clause in the Dispatch Agreement is mandatory.

    c. *Forum Selection and Choice of Law*

Finally, Defendant argues that the Agreements are ambiguous because the BCA has an Illinois choice of law provision, while the Dispatch Agreement has a Utah forum selection clause. Enterprise asserts that it is "nonsensical for ProStar to assert on one hand that all disputes are to be filed in Utah, but that they are to be governed by Illinois Law."[30] Defendant continues by calling the choice of law and forum selection clauses an "obvious conflict."[31] This assertion leads Enterprise to conclude that the contract is ambiguous and therefore, "must be construed against the drafter."[32]

Under Illinois law, "a choice-of-law clause and a forum-selection clause [are] two separate and distinct things. If a choice-of-law clause were effectively a forum-selection clause, there would be no such thing as a forum-selection clause as distinct from a choice-of-law

---

[28] *Excell, Inc. v. Sterling Boiler & Mech.*, 106 F.3d 318, 321 (10th Cir. 1997).

[29] *Dawson v. Fitzgerald*, 189 F.3d 477, at *9 (10th Cir. 1999) (unpublished table decision).

[30] Docket No. 12, at 5.

[31] *Id.*

[32] *Id.* (citing to *Caldas & Sons v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994)).

clause."[33] There is no conflict between the provisions merely because Illinois law is to be applied by a Utah court. Indeed, "federal judges routinely apply the law of a State other than the State in which they sit."[34] Enterprise's analysis makes a forum selection clause superfluous where a choice of law provision is present. This argument is not supported by the law. Therefore, the choice of Illinois law does not undermine the validity of the forum selection clause.

   3. *Transfer of Venue*

Having determined that the Dispatch Agreement contains a mandatory forum selection clause, the Court considers Defendant's request to transfer venue under 28 U.S.C. § 1404(a). The Supreme Court has long recognized that when the parties consent to venue, valid forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."[35] More recently, the Supreme Court explained that "a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis,"[36] in two ways relevant here. First, "the party defying the forum-selection clause . . . bears the burden of establishing that . . . the forum for which the parties bargained is unwarranted."[37] And second, the court "should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses . . . ."[38]

---

[33] *Khan v. Gramercy Advisors, LLC.*, 61 N.E.3d 107 (Ill. 2016) (citation omitted).

[34] *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 584 (2013).

[35] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (citations omitted).

[36] *Atl. Marine Constr. Co.* 134 S. Ct. at 581. The Court indicated three changes in the §1404(a) transfer analysis. The first two are presented here, and the third suspends the rule allowing the law from the plaintiff's choice of venue to transfer with the case. *Id.*

[37] *Id.* (analyzing a fact pattern where the plaintiff has filed the action in a forum other than the preselected forum and is opposing transfer to the selected forum).

[38] *Id.* at 582.

Therefore, "[a] court . . . must deem the private-interest factors to weigh entirely in favor of the preselected forum"[39] and "may consider arguments about public-interest factors only."[40] "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."[41]

Enterprise presents analysis of: 1) the Plaintiff's choice of forum; 2) the accessibility and convenience of witnesses; 3) the advantage of having a local court determine questions of local law; and 4) all other considerations of a practical nature that make a trial easy, expeditious and economical. The bulk of these factors are private interest factors, which are not considered because of the presence of a valid forum selection clause. Therefore, the only factor considered by the Court is the preference for a local court to determine questions of local law.

Certainly, "[w]hen the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale."[42] Because the BCA is governed by Illinois law, the public interest in the Northern District of Illinois adjudicating issues of Illinois law may weigh slightly in favor of transfer. However, Defendant has not alleged that Illinois contract law differs significantly from Utah contract law and, as stated, federal judges regularly apply law from other jurisdictions. Additionally, Enterprise undermines its own argument by stating that it intends to seek dismissal of the breach of contract claim, so that only federal law will remain. Thus, even this factor does not support transfer. Because all private and public interest factors weigh in favor of the selected forum, keeping the proceedings in Utah is appropriate. Therefore, the Court will not transfer the case to the Northern District of Illinois.

---

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010).

## III. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss for Improper Venue or, in the Alternative, for Change of Venue (Docket No. 9) is DENIED. It is further

ORDERED that Plaintiff's Motion for Leave to File Sur-Reply (Docket No. 13) is GRANTED.

DATED November 28, 2017.

BY THE COURT:

_____
TED STEWART
United States District Judge